DECISION
 IN MANDAMUS ON OBJECTIONS TO THE MAGISTRATE'S DECISION {¶ 1} Relator, Karen S. Jordan, has filed an original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to authorize her to receive brand name medications at a cost to her no greater than if she were receiving generic equivalents for the brand name medications. *Page 2 
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc. R. 12(M) of the Tenth District Court of Appeals. On February 6, 2007, the magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.)
 {¶ 3} Relator has filed objections to the magistrate's decision, arguing that the magistrate erred in: (1) finding no evidence that relator requested or obtained authorization for brand name medications prior to the effective date of Ohio Adm. Code 4123-6-21(I); (2) finding that the statutory constitutional issue need not be reached; and (3) failing to apply the proper legal test in adjudicating relator's claims under R.C. 1.48 and Section 28, Article II, Ohio Constitution.
 {¶ 4} At the outset, the commission concedes that the magistrate erred in determining, under the conclusions of law, that relator "has not presented evidence that she did, in fact, request and receive prior authorization for brand-name medications." (Magistrate's Decision, at ¶ 38.)
 {¶ 5} The commission argues, however, that the magistrate did not err in denying the requested writ because relator has not shown an unqualified or absolute right to receive brand name medications. We agree.
 {¶ 6} Relator's primary contention before the magistrate was that the commission abused its discretion by retroactively applying Ohio Adm. Code4123-6-21(I) to a 1984 claim in violation of Section 28, Article II, Ohio Constitution. More specifically, relator argued that, in 1984, at the time of her injury, the law governing medications in the workers' compensation system did not prohibit reimbursement of brand name *Page 3 
medications. Relator argued that the promulgation of Ohio Adm. Code4123-6-21(I), effective October 1, 2005, which essentially sets a "maximum allowable cost" for brand name drugs (i.e., making a claimant responsible for the difference in cost between a brand name and the maximum allowable cost), constituted a substantive change in the law which could not be retroactively applied to her. We find no merit to this argument.
 {¶ 7} At the time of relator's injury, R.C. 4123.66 provided in part: [T]he industrial commission shall disburse and pay from the state insurance fund such amounts for * * * medicine as it deems proper[.] * * * The commission may adopt rules with respect to furnishing * * * medicine to injured or disabled employees entitled thereto, and for the payment therefor." In interpreting this statute, this court has previously held that such statute does "not contemplate full recovery of all pecuniary losses," and that the statute "gives the commission discretion not only to determine causal relationship, value and similar questions, but also to determine the total amount of medical award to be made for all medical services." (Emphasis sic.) Luft v. Young (1961),114 Ohio App. 73, 75
 {¶ 8} Under Ohio law, a statute is retroactive if it "`takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past[.]'" Van Fossen v.Babcock Wilcox Co. (1988), 36 Ohio St.3d 100, 106, citingCincinnati v. Seasongood (1889), 46 Ohio St. 296, 303.
 {¶ 9} Here, relator has not shown a vested right to reimbursement for brand name drugs. At the time of relator's injury, in 1984, there was no statutory right to any particular reimbursement amount for medicine; rather, the statutory scheme under R.C. 4123.66 vested the commission with discretion to pay amounts for medicine as "deem[ed] *Page 4 
proper," and to promulgate rules with respect to such payment. Therefore, despite relator's contention that the magistrate erred in failing to reach the statutory/constitutional argument, we reject relator's retroactivity claim, as relator has failed to show that the commission improperly applied Ohio Adm. Code 4123-6-21(I) to her 1984 claim.
 {¶ 10} Accordingly, while we adopt the magistrate's findings of fact, and the magistrate's recommendation that the writ be denied, we disagree with the magistrate's conclusions of law. Based upon the foregoing, we sustain in part relator's first objection, but overrule relator's second and third objections, and deny relator's request for a writ of mandamus.
Objections sustained in part and overruled in part; writ denied.
 BRYANT and TYACK, JJ., concur. *Page 5 
 APPENDIX A NUNC PRO TUNC MAGISTRATE'S DECISION
Rendered on February 6, 2007
 IN MANDAMUS {¶ 11} Relator, Karen S. Jordan, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to authorize her to receive brand-name medications at a cost to relator which would be no greater if relator was receiving generic equivalents for those brand-name *Page 6 
medications. Relator contends that, pursuant to the doctrine of res judicata, the commission is required to permit her to receive that medication at no greater cost than if she was receiving generic equivalents and that any increase in the cost of brand-name medications cannot be passed on to her, because to do so, constitutes a retroactive application of the law which denies her a substantive right.
Findings of Fact: {¶ 12} 1. Relator sustained a work-related injury on June 28, 1984, and her claim has been allowed for the following conditions: "derangement meniscus; right knee tear lateral meniscus; right knee and leg sprain; right osteoarthritis leg; major depressive disorder; right osteomyelitis leg; reflex sympathetic dystrophy/complex regional pain syndrome right lower extremity."
 {¶ 13} 2. Relator has had several surgeries, including a total right knee replacement surgery in 2004. Relator has also received extensive periods of disability compensation.
 {¶ 14} 3. In January 2005, approximately seven months following her right total knee replacement surgery, the Ohio Bureau of Workers' Compensation ("BWC") referred relator's file to L. J. Mascarennas, M.D., to review relator's use of prescription medication. Ultimately, Dr. Mascarennas concluded as follows:
 Claimant is a 47-year-old female who struck her knee on a wooden skid. She was initially diagnosed with sprain of the Rt. knee and later with a tear of her lateral meniscus. Claimant underwent three arthroscopic procedures and eventually on 6/10/04 underwent a Rt. TKA performed by Dr. Fada. Claimant was admitted to Grant Medical Center on 11/12/04 because of possible osteomyelitis of the Rt. knee; however, it was proved that this was not the case. Claimant has been treated by Dr. Hendler in Maryland since 2002. *Page 7 
 It is my medical opinion that this claimant's current symptomatology regarding her knee pain is reasonabl[y] related to the allowed conditions in this claim. However, it has been over six months since her TKA. It is my recommendation that narcotic analgesics be tapered and discontinued over a period of 4 months. The use of muscle relaxants and NSAIDs are appropriate. The recent use of antibiotics for possible osteomyelitis is also appropriate. The use of anti-convulsants and Lidoderm are not warranted. The claimant does not have a psych allowance; therefore, the use of anti-anxiety medications and antidepressants are not indicated.
(Emphasis sic.)
 {¶ 15} 4. By letter mailed January 18, 2005, relator was notified of the following:
 As a result of the BWC's recent file review of all medical documentation in your claim, the following decisions have been made regarding reimbursement of on-going prescription medication-
 [One] NARCOTIC ANALGESICS will no longer be reimbursed effective 5-17-2005 — this is to allow for a 4 month tapering period. ANTI-ANXIETY DRUGS, ANTICONVULSANTS, TOPICAL LOCAL ANESTHETICS and TRICYCLIC ANTIDEPRESSANT RELATED will no longer be reimbursed effective 1-17-2005. The treating physician has not provided any medical documentation to support the use of these medications in the treatment of the allowed conditions of this claim.
 [Two] GLUCORTICOIDS, NSAIDS, QUINOLONES and SKELETAL MUSCLE RELAXANTS were found warranted and will continue to be reimbursed.
 Should the injured worker or employer or their representative disagree with this decision, they may file a Motion (Form C-86) with BWC. Any new evidence they wish to have reviewed should be included with the Motion. The evidence BWC considered in making this decision is available upon request.
(Emphasis sic.) *Page 8 
 {¶ 16} 5. In response thereto, Francisco A. Garabis, M.D., one of relator's treating physicians, authored a letter dated March 12, 2005. Dr. Garabis stated:
 * * * There is no doubt that she does have chronic pain syndrome that requires narcotic pain medications. These medications are necessary due to the allowed conditions (including osteoarthritis) and the total right knee replacement that was covered under this claim.
 {¶ 17} 6. Thereafter, relator filed a C-86 motion requesting that "payment of her medications remain covered under [her] claim," and she submitted the March 12, 2005 report of Dr. Garabis as well as records related to her 2004 right knee replacement surgery.
 {¶ 18} 7. A separate physician review was obtained from S. R. Dange, M.D., dated May 18, 2005. Dr. Dange outlined relator's treatment as well as her medications. Dr. Dange specifically noted that Dr. Garabis recommended narcotic medications for the nonallowed conditions, chronic pain syndrome, and ultimately concluded that the medical evidence in the file does not support the reinstatement of the medications for which reimbursement has been terminated.
 {¶ 19} 8. By letter mailed May 20, 2005, the BWC rendered the following decision:
 C86 Motion filed 4/6/05 where injured worker requested that medications denied per BWC Denial Order 1/18/05 be covered under this claim, is DENIED.
 Terminated classifications of medications are as follows, Narcotic Analgesics, Anti-Anxiety Agents, Anticonvulsants, Topical Local Anesthetics, and Tricyclic Antidepressants.
This decision is based on:
 [One] BWC Physician Medication Review on 5/18/05, where S.R. Dange MD opined the medical evidence does no [sic] *Page 9 
support the reinstatement of the medications for which the reimbursement has been previously terminated.
 [Two] BWC Rules and Guidelines.
(Emphasis sic.)
 {¶ 20} 9. Relator appealed and the matter was heard before a district hearing officer ("DHO") on June 24, 2005. The DHO determined that "the narcotic analgesics, muscle relaxants and topical local anesthetics prescribed by Dr. Hendler are to be paid for in this claim."
 {¶ 21} 10. Because the DHO did not specifically list the medications which Dr. Hendler was prescribing, relator appealed for the following reasons:
 * * * [T]o ensure that the approved medications are listed in the order. Ms. Jordan has experienced significant problems getting her prescriptions filled and an order that explicitly enumerates the approved medications would be very helpful.
 {¶ 22} 11. The appeal was heard before a staff hearing officer ("SHO") on August 18, 2005. The SHO affirmed the prior DHO order yet modified it "to specifically authorize the following medications, pursuant to Bureau of Workers' Compensation rules and regulation[s]: Roxicodone; Soma; Sinequan; Klonopin; Lidoderm; Buspar."
 {¶ 23} 12. On October 1, 2005, a new version of Ohio Adm. Code4123-6-21 became effective. For purposes of this mandamus action, only one change is truly significant. Prior to October 1, 2005, subsection (F) had provided as follows:
 Claimants who request a brand name drug or whose physician specifies a brand name drug designated by "dispense as written" on the prescription for a medication which has an applicable maximum allowable cost price shall be liable for the product cost difference between the established maximum allowable cost price of the drug product and the average wholesale price plus or minus the bureau *Page 10 
established percentage of the dispensed brand name drug, if prior authorization for the brand name drug is not obtained by the prescriber
(Emphasis added.)
 {¶ 24} Effective October 1, 2005, subsection (F) was renumbered as subsection (I) and now provides as follows:
 Claimants who request a brand name drug or whose physician specifies a brand name drug designated by "dispense as written" on the prescription for a medication which has an applicable maximum allowable cost price shall be liable for the product cost difference between the established maximum allowable cost price of the drug product and the average wholesale price plus or minus the bureau established percentage of the dispensed brand name drug.
 {¶ 25} 13. On February 6, 2006, relator filed the following C-86 motion:
 Claimant, through counsel, requests that she be authorized to receive the following name-brand medications: Soma; Sinequan; Klonopin; Buspar; Cipro; and Roxicodone. These medications were previously authorized in this claim by SHO order dated 8/18/2005. However, the BWC refuses to pay for these name-brand drugs pursuant to its new prescription medication "policy." According to the BWC, specific name-brand drugs can be authorized only if they are ordered paid by the Industrial Commission based upon proof from the treating physician that the claimant is unable to take generic drugs.
Relator attached a copy of the August 18, 2005 SHO order which listed her medications, a December 19, 2005 report of Dr. Hendler indicating that relator claims that she cannot tolerate generic drugs because she gets an allergic reaction to them, and requesting that she have nothing but brand-name drugs. Relator also included a letter from her pharmacist which noted the estimated cost difference between the brand-name and generic drugs which relator was receiving. *Page 11 
 {¶ 26} 14. By order mailed March 14, 2006, the BWC denied relator's request for full reimbursement for "Soma, Sinequan, Klonopin, Buspar, Cipro and Roxicodone brand name drug[s]," for the following reasons:
 Reimbursement for all outpatient drugs are limited to the amount allowed by BWC's fee schedule. You are responsible for the total difference in cost between the brand name drug and the amount allowed for it by BWC's fee schedule if your physician designates that you receive or you choose to receive this brand name drug instead of its generic equivalent.
 If you do not wish to pay the total difference in cost, other options available to you are to have your prescribing physician agree either to have a generic drug dispensed or to prescribe a different drug for you.
This decision is based on:
 Ohio Administrative Code (OAC) 4123-6-21(I), which states that the Bureau of Workers' Compensation (BWC) does not reimburse in full for any brand name drug when an equivalent generic drug is available. An equivalent generic drug is available for the requested brand name drug.
 {¶ 27} 15. Relator's appeal was heard before a DHO on April 28, 2006 and resulted in an order modifying the prior BWC order, yet denying relator the rate of reimbursement which she was requesting as follows:
 It is the finding of the District Hearing Officer that the injured worker's [sic] requesting reimbursement for the prescriptions Soma, Sinequan, Klonopin, Buspar, Cipro, and Oxycodone.
 The District Hearing Officer finds that we [sic] reimbursement for these prescriptions is limited to the amount of generic equivalent. The injured worker is responsible for the total difference in cost between the brand name drug and the amount allowed for it by the Bureau of Workers' Compensation's fee schedule. O.A.C. 4123-6-21(I) states that only generic prescriptions will be reimbursed in full unless a generic equivalent is not available. *Page 12 
 Therefore, the injured worker's request to have the brand name prescriptions for Soma, Sinequan, Klonopin, Buspar, Cipro, and Oxycodone approved is denied.
 This order is based [on] O.A.C. 4123.6-21(I) [sic].
 {¶ 28} 16. Relator appealed the matter to an SHO who, by order dated May 31, 2006, upheld the prior DHO order as follows:
 A Staff Hearing Officer order, dated 08/18/2005, authorized 5 prescription medications "pursuant to Bureau of Workers' Compensation rules and regulation." The injured worker has medical evidence that she can not take generic medications. Under O.A.C. 4123-6-21 a brand name prescription medication could be paid by the Bureau of Workers' Compensation if prior authorization was obtained. The injured worker initially received prior authorization and obtained the brand name medications. A change was made in O.A.C. 4123-6-21 that only allowed Bureau of Workers' Compensation payment of the generic amount. If an injured worker still desired the brand name medication, he or she would have to pay the difference. The effective date of the change in O.A.C. 4123-6-21 was 10/01/2005.
 The Bureau of Workers' Compensation refused to pay the brand name amount and the injured worker filed a C-86 motion for the full payment of the brand name medications on 03/14/2006. The motion was denied by an Administrator's order of 03/14/2006. The Administrator's order was modified by a 04/28/2006 District Hearing Officer order, but in substance, the request for payment of the amount of the brand name medications was still denied.
 The injured worker, through counsel, argues that such denial was improper and that the law in effect in 1984, the year of the date of injury, should govern. The injured worker, also, argues that this amounts to a substantive change in the law. The injured worker has presented evidence from the pharmacy she uses on how substantial the amount of the difference will be to her.
 The Staff Hearing Officer, here finds the District Hearing Officer order to be correct in its holding. O.R.C. 4123.66 gives the Administrator of the Bureau of Workers' Compensation *Page 13 
authority to pay such bills. It, also, gives the Administrator power to adopt rules, with the advise [sic] and consent of the Workers' Compensation Oversight Commission. It is reasonable to expect that rules will change from time to time. The Staff Hearing Officer order of 08/18/2005 did not refer to specific wording in a rule. It simply authorized the medications "pursuant to Bureau of Workers' Compensation rules and regulations." The Staff Hearing Officer, here, finds that such general language would incorporate change, if any, in rules or regulations rather than be limited to specific language. Further, O.R.C. 4123.66 seems broad in its scope as to the Administrator's authority dealing with enactments of rules and regulations.
 {¶ 29} 17. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 30} In this mandamus action, relator makes two arguments. First, relator contends that the commission's August 18, 2005 order wherein the SHO authorized that she receive Roxicodone, Soma, Sinequan, Klonopin, Lidoderm and Buspar is a final order and that, pursuant to the doctrine of res judicata, the commission is required to order the BWC to reimburse relator fully for those brand-name medications. Second, relator contends that the change in the Ohio Administrative Code, whereby it is now provided that claimants will be reimbursed only the amount of generic equivalents even if they desire or if their treating physician requests that they receive brand-name medications, cannot be applied to her because, as she argues, she previously received full reimbursement for the brand-name medications. Relator contends that any change in the reimbursement schedule constitutes a substantive change in the law which cannot be retroactively applied to her. For the reasons that follow, it is this magistrate's decision that relator's request for a writ of mandamus should be denied. *Page 14 
 {¶ 31} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. State ex rel. Berger v. McMonagle (1983), 6 Ohio St.3d 28.
 {¶ 32} In her first argument, relator contends that the doctrine of res judicata requires that the commission order the BWC to continue to fully reimburse her for the brand-name medications in the same manner in which she asserts the BWC had been previously reimbursing her. Relator asserts that the August 18, 2005 SHO order requires the BWC to do so. As noted in the findings of fact, following the June 24, 2005 DHO order finding that relator should still receive the narcotic analgesics, muscle relaxants and topical local anesthetics prescribed by Dr. Hendler, relator appealed because the DHO order did not specifically list those medications. As such, in the commission's August 18, 2005 order, the SHO ordered the following: "[T]o specifically authorize the following medications, pursuant to Bureau of Workers' Compensation rules and regulation: Roxicodone; Soma; Sinequan; Klonopin; Lidoderm; Buspar."
 {¶ 33} Contrary to relator's arguments, the SHO order did not provide that she would be reimbursed at any specific rate, nor did the order provide that she would actually receive the brand-name medications. Instead, as noted previously, pursuant to a file review, the BWC had informed relator that it was going to stop reimbursing her for specific medications beginning May 17, 2005, on grounds that her treating physician had not provided any medical documentation to support her use of those medications in the treatment of her allowed conditions. Ultimately, the commission determined that relator *Page 15 
should still receive those medications. However, contrary to relator's assertions, the SHO order did not compel the BWC to reimburse relator in a specific manner nor did that order specifically authorize that only brand-name medications would be dispensed, and relator's argument that the doctrine of res judicata somehow applies is not well-taken.
 {¶ 34} Relator also contends that her right to specific reimbursement is a substantive right and that the commission and BWC are required by law to reimburse her in 2006 in the same manner in which she was reimbursed, or would have been reimbursed, as of the date of her injury in 1984. For the reasons that follow, the magistrate disagrees with relator's argument.
 {¶ 35} Relator is correct when she states that compensation and benefits payable in a workers' compensation claim are governed by the law in effect on the date of the claimant's injury. See, e.g., State exrel. Brown v. Indus. Comm. (1993), 68 Ohio St.3d 45. It is further understood that a statute or administrative rule cannot be applied retroactively if the application impairs a substantive right. See, Article II, Section 28, Ohio Constitution. Or, as the Supreme Court of Ohio stated in State ex rel. Kilbane v. Indus. Comm. (2001),91 Ohio St.3d 258, 259:
 * * * [Entitlement to workers' compensation, being a substantive right, is measured by the statutes in force on the date of her injury, [Brown]; however, the same is not true for laws affecting only the enforcement of that right, Van Fossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100, 107-108[.]
 {¶ 36} In the present case, relator has a substantive right to receive treatment and medication and to have her treatment and medication paid for, to a certain extent; however, the rate at which relator and other claimants are reimbursed for their medication *Page 16 
is not a substantive right. Further, relator always has been, and still is, permitted to request and receive brand-name medications instead of generic equivalents. However, the BWC has always had the authority to authorize and determine rates of reimbursement. Specifically, former R.C. 4123.66 gave the commission discretion to disburse and pay from the state insurance fund the amounts for medical, nurse, and hospital services and medications as deemed proper. Current R.C. 4123.66 provides the administrator of the BWC, instead of the commission, with the same discretion.
 {¶ 37} As stated previously, relator has a right to receive treatment and medication. However, even that right is somewhat limited. It is conceivable that, at some point in the future, the commission may deny relator further treatment and may deny relator access to certain of the medications which she is currently taking. The fact that she is receiving certain treatment and certain medications today is not a guarantee that she will receive them in the future. Similarly, relator has no absolute guarantee that she will continue to be reimbursed at any specific rate.
 {¶ 38} In the present case, the only evidence relator presented showing that she ever requested prior authorization to receive brand-name medications rather than generic ones is the February 6, 2006 C-86 motion which post-dates the change in the rule after the "prior authorization" language was removed. The magistrate realizes that relator contends that she has been receiving the brand-name medications for some time and that they have been fully paid for, but, just as relator had not demonstrated that res judicata applies, she likewise has not presented evidence that she did, in fact, request and receive prior authorization for brand-name medications. As such, it is this magistrate's opinion that the constitutional issue is not even reached in this case. *Page 17 
 {¶ 39} However, even if the constitutional question is addressed, it is this magistrate's conclusion that the change is procedural and not substantive. Pursuant to R.C. 4123.54(A), relator has a right to receive, among other things, medication. However, she does not have an unqualified/absolute right to receive brand-name medications.
 {¶ 40} The BWC has always been allowed to establish a maximum allowable cost for medications which are pharmaceutically and therapeutically equivalent by any method. Further, a claimant's right to reimbursement has always been limited as the reimbursement is not to exceed the BWC's established rate for the medication regardless of the price paid by the claimant for that medication. Claimants have always been allowed to request a brand-name medication and their physicians have always been allowed to request that the claimant receive a brand-name medication instead of the generic equivalent. Further, any medication which had an applicable maximum allowable cost price was reimbursed at a certain rate. As such, the changes in the Ohio Administrative Code indicate that there has always been discretion to determine the rates at which claimants were reimbursed for various medications and, as stated previously, the magistrate finds that there is no substantive right to continue to be reimbursed in the exact same manner and at the exact same rate.
 {¶ 41} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion and this court should deny relator's request for a writ of mandamus. *Page 1